IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ERIKA BELTRAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CBD 04-3498 |
| ) | |
| PETER BARASH, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**
**GRANTING PLAINTIFFS' JOINT MOTION FOR A NEW TRIAL**

Plaintiffs Erika Beltran and Lillian Herrera jointly filed this personal injury action against Defendants Peter and Leah Barash, Eric Cooper and St. Paul Travelers Insurance Company ("Travelers"). Before this Court is Plaintiffs' Joint Motion for a New Trial ("Plaintiffs' Motion") (Docket Item No. 82) and the memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). In light of the powerful closing argument made by counsel suggesting that Plaintiffs' testimony was a recent fabrication, and the recent discovery of evidence to the contrary in the possession of the insurance carrier, Plaintiffs are entitled to a new trial. For the reasons below, the Court hereby GRANTS Plaintiffs' Motion.

**I. BACKGROUND**

In Plaintiffs' Complaint, they allege they were cut off by a phantom driver in the early morning hours of May 16, 2003, causing their vehicle to hydroplane into the Jersey wall and overturn in the left lane of Interstate 495. After Plaintiffs were trapped for ten minutes in their overturned vehicle, another vehicle driven by Defendant Cooper collided with Plaintiffs' vehicle.

This collision ejected Plaintiff Herrera from the vehicle and caused or aggravated bodily injury to both Plaintiffs. At the time of the accident, Plaintiff Herrera's vehicle was insured by Travelers for both liability and uninsured motorist coverage.

On May 30, 2003, about two weeks after the accident, Travelers recorded a statement from Plaintiff Beltran. On June 19, 2003, both Plaintiffs retained Douglas Sparks as counsel to represent them for injuries received in the accident. On October 3, 2003, Plaintiff Herrera gave a recorded statement to Travelers at Mr. Spark's office. Mr. Sparks' office followed up twice with the insurance adjuster, requesting a copy of the transcripts of Plaintiffs' recorded statements ("Plaintiffs' Statements"). (Goldfeder Aff. ¶¶ 9-10) Again, on January 21, 2004, Mr. Sparks wrote to Kandy Smith, the Travelers adjuster, requesting Plaintiffs' Statements and referencing Plaintiffs' uninsured motorist claims. Mr. Sparks never received copies of Plaintiffs' Statements.

**A. The Filing of Suit**

On November 1, 2004, Plaintiff filed suit against Defendant Peter Barash. On December 8, 2004, Defendant Peter Barash filed a counter-claim against Plaintiff Herrera. Rodger Robertson, Esquire, was assigned by Travelers to represent Plaintiff Herrera in the counterclaim.

On January 18, 2005, Plaintiffs amended their Complaint to include Defendants Leah Barash and Eric Cooper. The Court entered a Scheduling Order and imposed a discovery deadline of April 22, 2005. On July 1, 2005, after the close of discovery, Plaintiffs again amended their Complaint to include Travelers on an uninsured motorist claim. In the uninsured motorist claim, Travelers was represented by Patricia Thornton, Esquire. Defendant Peter

Barash's counter-claim against Plaintiff Herrera was settled prior to trial. Accordingly, Mr. Robertson did not participate in the trial.

### B. Plaintiffs' Testimony During the Trial Proceedings

On May 16, 2006, this Court empaneled a jury. On May 17, 2006, Plaintiff Beltran testified on cross examination[1] that on the night of the accident she was a passenger in the car of Plaintiff Herrera, who was driving into Virginia after midnight. (Pl. Beltran Tr. Cross, 12-13, May 17, 2006) Plaintiff Beltran testified that it was raining heavily and that Plaintiff Herrera had reduced her speed, activated her emergency flashers and high beams, and was otherwise being extra careful due to the rain. (Beltran Tr. 4-5) She testified that upon entering Virginia, it was still raining heavily when a fast-moving car came from the left and cut off Plaintiffs' vehicle. (Beltran Tr. 5) She further stated that Plaintiff Herrera applied her brakes and the vehicle began to hydroplane, coming into contact with the Jersey wall on the left side of the car and that the car then tipped over onto the driver's side. (Beltran Tr. 7-9) Plaintiff Beltran testified that the emergency lights were still activated and Plaintiff Herrera had turned on a dome light inside the vehicle to locate a cellular phone to contact emergency services. (Beltran Tr. 9)

On May 18, 2006, Plaintiff Herrera testified on cross examination by Mrs. Thornton that at the Georgia Avenue exit on Interstate 495 it began to rain heavily and she activated her emergency equipment. (Pl. Herrera Tr. Cross Exam, 5, May 18, 2006) She testified that her vehicle was in the third lane from the left when crossing the American Legion Bridge and that after crossing the bridge, a vehicle driven by an unidentified driver came from the left and

---

[1] Only excerpts of Plaintiff Beltran's and Plaintiff Herrera's cross examinations were provided with Plaintiffs' Motion.

crossed in front of Plaintiff's car.  (Herrera Tr. 7-8)  She stated that when the unidentified car passed her, she then applied the brakes and the car hydroplaned across the roadway at an angle.  (Herrera Tr. 8)  She further stated that the car struck the Jersey wall and flipped over with the driver's side against the pavement with the front of the car angled towards the wall.  (Herrera Tr. 8-9)  Plaintiff Herrera then testified that her left elbow was pinned underneath the driver's side of the car.  (Herrera Tr. 9)  She stated that she then turned on the dome light in the vehicle to locate her cellular phone and call 911.  (Herrera Tr. 10)  She heard several cars were passing by during this time, but did not specifically see or hear the car being driven by Defendant Cooper approaching.  (Herrera Tr. 10)

In closing statement by Mrs. Thornton on behalf of Travelers, Mrs. Thornton argued that no witnesses had come forward to corroborate Plaintiffs' story that they had been cut off by another car.  (Trial Tr. Closing Arguments, 24, May 19, 2006)  She argued that Plaintiff Beltran had been silent concerning being cut off until the time of her deposition on March 22, 2005, approximately two years after the accident had occurred.  (Closing Tr. 25-27)  Mrs. Thornton emphasized the "complete lack of documentation that Miss Beltran and Miss Herrera were cut off" in the accident.  (Closing Tr. 27)  Finally, she argued that no statement regarding a phantom vehicle was made until the attorneys got involved.  (Closing Tr. 29)

### C. Plaintiffs' Present Motion

Plaintiffs principally complain of the closing arguments made by Mrs. Thornton, wherein Travelers presented its summary of the evidence to the jury.  It is plain that Travelers' theory of the case was based on the absence of evidence of corroboration of Plaintiffs' version of the accident, particularly in the trial testimony.  In closing Mrs. Thornton stated: "Did anybody from

the ambulance come in here and tell you, well, they told us they were cut off and then lost control?" She added, "Nowhere do you find any history that [Plaintiff Herrera] was cut off by a vehicle." Mrs. Thornton continued, "Did you ever hear [Sonya, Plaintiff's best friend, state], she told me how the accident happened? They were cut off? No." (Closing Tr. 24) She argued, "From day one of the accident through the testimony here today, you've not heard any corroborating evidence that Miss Beltran ever told anybody that they were cut off by another vehicle and that's how this accident occurred." (Closing Tr. 25) Again, Mrs. Thornton stated, "No information from any witness who testified in this case [was offered] to corroborate the statement that there was a phantom vehicle which cut off the plaintiffs." (Closing Tr. 28) Finally Mrs. Thornton posited:

> There was no statement initially that they were cut off by a vehicle. . . . There was no such statement until the attorneys got involved. And when the attorneys got involved, there had to be some explanation for why this car was there in this position, rolled over so that they could sue Mr. Cooper.
>
> And this explanation is, we've got to come up with something. There is nothing in any of the record, they were cut off by an unidentified vehicle.

(Closing Tr. 29)

After a brief deliberation, the jury returned a verdict in favor of all Defendants on May 19, 2006. Three days after the close of the trial, Mr. Sparks contacted Mrs. Thornton regarding the statements that Plaintiff Beltran and Plaintiff Herrera made to Travelers on May 30, 2003 and October 3, 2003, respectively.

On May 22, 2006, Mr. Sparks wrote to Mrs. Thornton:

> On Friday, May 19, 2006, Travelers for the first time moved to have the UM claim dismissed, asserting that plaintiffs failed to timely

>>notify Travelers that an unidentified (uninsured) vehicle had cut them off. . . . On October 3, 2003, Mr. Burns [Travelers investigator] came to my office and recorded the statement of Lillian Herrera. She told him that she had been <u>cut off by an unidentified driver</u> prior to the second impact. . . . [O]n January 21, 2004, I wrote to Kandy Smith, the Travelers adjuster, again requesting the statements, and referencing the UM claims of the plaintiffs.

(Emphasis in original).

On May 23, 2006, Mr. Lapidus, who later became counsel for Plaintiff Beltran, also sent Mrs. Thornton a letter requesting his client's statements. That day, Mrs. Thornton responded in a letter to Mr. Lapidus and Mr. Sparks:

>>You have each requested that I provide copies of these statements. I do not have copies of any statements, and if I did have copies of these statements, you certainly would have received them from me long ago. . . . With regard to my closing argument, I believe both of you know that my argument was based on the fact that neither Plaintiff produced any corroborating evidence to support their contention that they were cut off by a vehicle before they lost control. Since Trooper Wolford had testified that Ms. Herrera told him that she was going 70 miles an hour when she lost control of the vehicle, I believe that was a credibility question which was ultimately decided by the jury.

On May 31, 2006, Mr. Robertson produced Plaintiffs' Statements made to Travelers shortly after the accident. These statements corroborate Plaintiffs' claims of being cut off by a phantom driver. Ms. Beltran's statement was given to Travelers weeks before the known involvement of counsel. They also provide additional facts pertinent to the merits of this case, including, for example, Plaintiffs' rate of speed prior to the collision, the lane in which Plaintiffs were traveling prior to being cut off, and the amount of time between being cut off by the phantom driver and the collision with Defendant Cooper. The documents submitted by Plaintiffs

and Defendants in the present motion indicate that Plaintiffs' Statements were in the possession of Travelers and/or Mr. Robertson, and were never disclosed to Mrs. Thornton.

On June 9, 2006, Plaintiffs' Motion was filed under Federal Rules of Civil Procedure 59 and 60, arguing that Plaintiffs' Statements were withheld by Defendant Travelers amounting to misconduct and prejudice requiring a new trial.

## II.  DISCUSSION

Plaintiffs filed the instant motion eleven days after the entry of judgment.  This is outside of the ten days required by Federal Rule of Civil Procedure 59(b) governing motions for new trials.  Accordingly, Plaintiffs' request for relief under Federal Rule of Civil Procedure 59 is denied.

Plaintiffs' Motion alternatively argues for consideration under Rule 60(b)(3).  In essence, "the difference between a Rule 59 motion and a Rule 60(b) motion is only the time that they are filed."  *Kontoulas v. A.H. Robins Co., Inc.*, 745 F. 2d 312, 316 (4th Cir. 1984).  A motion for relief from judgment under Rule 60(b) is addressed to the discretion of the Court.  *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F. 2d 249, 251 (4th Cir. 1967).  The Court finds this approach worthy of consideration.

Federal Rule of Civil Procedure 60(b)(3) provides for relief from a final judgment where there has been "fraud . . . , misrepresentation, or other misconduct of an adverse party."[2]  In *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F. 2d 68, 71 (4th Cir. 1981), the Fourth Circuit set forth three factors that a moving party should establish in order to prevail

---

[2] In the 1946 Amendment to Rule 60, the legislature specifically stated that it does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief.

on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious claim or defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct must have prevented the moving party from fully presenting its case. In considering whether these elements have been established, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id.*

### A.  Plaintiffs have presented meritorious claim.

The Court finds that Plaintiffs have presented a meritorious claim. Plaintiffs claim Defendant Cooper was negligent in the operation Defendant Peter Barash's motor vehicle and that such negligence proximately caused injury to Plaintiffs. Plaintiffs also claim that the operator of an unidentified vehicle was negligent and proximately caused injury to them. Crucial to Defendants' argument is the allegation of contributory negligence on behalf of Plaintiffs. Plaintiffs' Statements support their claims against Defendants and contradict Defendants' allegations of contributory negligence.

In *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994), the defendant Spirit Cruises moved for a new trial under Rule 60(b)(3) when new evidence surfaced supporting its allegation that another defendant was negligent and responsible for injuries to the plaintiff. The plaintiff had been injured while riding on a pleasure boat. The plaintiff sued Spirit Cruises and the drivers of the pleasure boat for negligence, arguing that Spirit Cruises was negligent for causing a wake and that the pleasure boat drivers were negligent for crossing it. The Court of Appeals found that Spirit Cruises had presented a meritorious defense when it argued that the other boat drivers' negligence caused injury to the plaintiff.

In *Schultz*, as in the present case, the issue of to whom negligence should be assigned is a close question. In the present case, Defendants' claims of contributory negligence on behalf of Plaintiff Herrera are contradicted in part by testimony noting the presence of a phantom vehicle. It is reasonable to assume, that when presented with an argument of recent fabrication, the jury may find such evidence persuasive on the issues of negligence and contributory negligence. Just as the assignment of negligence to another defendant in *Schultz* persuaded the Court to find their defense was meritorious, this Court is influenced by the possible assignment of negligence by the trier of fact. For these reasons, the Court finds that Plaintiffs' claim is meritorious and the first element is satisfied.

**B. Plaintiffs have demonstrated misconduct.**

Plaintiffs argue that Travelers engaged in misconduct by impermissibly withholding Plaintiffs' Statements and that Defendants' closing arguments "crossed the line," by arguing facts not in evidence and unethically disparaging Plaintiffs and Plaintiffs' counsel. They contend that, cumulatively, this misconduct resulted in a miscarriage of justice. This Court does not find that Mrs. Thornton engaged in misconduct, but it finds that Travelers did.

*1. Mrs. Thornton's actions did not amount to misconduct.*

Plaintiffs argue that Mrs. Thornton engaged in misconduct because she withheld Plaintiffs' Statements and because in closing argument she urged the jury to draw adverse inferences from the lack of corroborative testimony. This Court finds that: (1) neither Travelers nor Mrs. Thornton *in representing the phantom vehicle* had a duty to disclose Plaintiffs' Statements under the Federal Rules of Civil Procedure; (2) Mrs. Thornton had no knowledge of

Plaintiffs' Statements; and (3) Mrs. Thornton did not commit misconduct by arguing that adverse inferences should be made by the jury due to the absence of corroborative evidence or witnesses.

      a.  <u>Mrs. Thornton was not required to provide Plaintiffs' Statements to Plaintiffs.</u>

Plaintiffs' argument is complicated by the fact that Travelers was added as a defendant after the close of discovery, so no meaningful discovery between Plaintiffs and Travelers occurred in this case. While Plaintiffs requested their statements from Travelers prior to Travelers becoming a defendant, no formal discovery request was ever made, and neither party sought to reopen discovery. Accordingly, without a discovery request, Mrs. Thornton was not required to produce any documents aside from those documents that must be disclosed without a request.

The only disclosures required of Mrs. Thornton absent a formal discovery request are the automatic disclosures covered under rule 26(a)(1):

> **(1) Initial Disclosures.** . . . a party must, without awaiting a discovery request, provide to other parties: . . . (B) a copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that *the disclosing party may use to support its claims or defenses, unless solely for impeachment* . . . ;

FED. R. CIV. P. 26(a)(1)(emphasis added).

Even assuming *arguendo* that Mrs. Thornton had possession of Plaintiffs' Statements, those statements would have nonetheless been exempt from the automatic disclosure requirement. Plaintiffs' Statements would not have been used in support of the claims or defenses of Travelers as a defendant. If anything, they would have been used as impeachment by Mrs. Thornton, which would make them exempt from disclosure under Rule 26(a)(1)(B).

Accordingly, there was no requirement that Travelers, *acting for the phantom vehicle*, automatically provide Plaintiffs' Statements to other parties.

### b. Mrs. Thornton had no knowledge of Plaintiffs' Statements.

This Court does not find any evidence to indicate that Mrs. Thornton had knowledge of the existence of Plaintiffs' Statements, even though they were in the possession of Travelers. Because Mrs. Thornton and Mr. Robertson were both retained by Travelers and represented adverse interests in the same litigation, Mr. Robertson's duty lied toward defending Plaintiff Herrera, making it less likely that he would have provided the documents to Mrs. Thornton.

Although Travelers was wise to secure separate counsel for these adverse interests, there remains a complex and shifting duty to fully comply with the rules of discovery for each interest represented. While it was entirely appropriate for Mrs. Thornton to not be privy to Plaintiffs' Statements, the paradigm shifted as to Travelers' responsibilities with the filing of the counter-claim, as discussed below.

### c. Mrs. Thornton did not engage in misconduct by arguing that adverse inferences be drawn from the absence of corroborative evidence or testimony.

This Court does not find that Mrs. Thornton engaged in misconduct by suggesting that the jury should draw adverse inferences from Plaintiffs' lack of corroborative evidence. The Court does not find that Mrs. Thornton had any knowledge of Plaintiffs' Statements. Suggesting that jurors draw adverse inferences against Plaintiffs because of the absence of testimony corroborating Plainitiffs' position is permissible.[3] While the Court agrees that Mrs. Thornton's

---

[3] Even if Mrs. Thornton was aware of Plaintiffs' Statements, but took no steps to prevent their disclosure, her argument from lack of record evidence would be permissible.

closing argument was damaging to Plaintiffs' case, it does not amount to misconduct by Mrs. Thornton, on these facts.

> *2. Travelers' actions amounted to misconduct given its role as insurer on the counter-claim.*

As a defendant on the counter-claim, Ms. Herrera, through counsel and Travelers, had an obligation to identify Plaintiffs' Statements to other parties involved in the litigation. This obligation arose pursuant to Ms. Herrera's status as a party and Travelers' role as agent for Ms. Herrera. The Federal Rules require Ms. Herrera and Travelers to disclose at least the existence of Plaintiffs' Statements to all parties to the litigation. Federal Rule of Civil Procedure 26(a)(1)(B) required Ms. Herrera and Travelers to provide either a copy or a description of all documents in her possession, control, or custody which Ms. Herrera and Travelers may use to support her claims or defenses.

Plaintiffs' Statements would have been used in the defense of Ms. Herrera in the counter-claim filed against her, making them subject to automatic disclosure under Rule 26(a)(1)(B). This Court finds that Plaintiffs' Statements were in the possession, control, and custody of Travelers, as an agent of Ms. Herrera – it was Travelers that eventually produced them.[4]

It should be noted that, prior to making the required initial disclosure on the counter-claim, counsel had an obligation under Federal Rule of Civil Procedure 26(g)(1) to make a "reasonable inquiry" into the facts of the case with Ms. Herrera and her agent, Travelers. In the absence of foul play, such inquiry would have revealed Plaintiffs' Statements. Thereafter, Federal Rule of Civil Procedure 26(e)(1) required supplementation upon learning that the

---

[4] On May 31, 2006, Mr. Robertson produced these documents from his file and provided them to Plaintiffs' counsel.

original disclosures were in some way incomplete or incorrect, and not otherwise provided in discovery.

Even if Travelers would not have provided Plainitiffs' Statements under a claim that they were privileged, Travelers still would have been required to expressly make such a claim and describe the "nature of the documents, communications, or things not produced or disclosed" in a manner that would have at least alerted the other parties to their existence. FED. R. CIV. P. 26(b)(5). Under this mere identification approach, Plaintiffs Beltran and Herrera would have arguably obtained and made use of Plaintiffs' Statements. Thus, because Plaintiffs' Statements were in Travelers' possession and were necessary to the defense of Ms. Herrera, they were subject to the automatic disclosure requirement of Rule 26(a)(1)(B).

The failure of Travelers to provide Plaintiffs' Statements is yet another instance in which problems arise because of the conflicts inherently brewing in the mix of insurance litigation. While the insured and the insurer have similar interests in a standard liability claim, in other situations, such as when an uninsured motorist claim is present, a conflict arises. This Court finds that Travelers failed to disclose Plaintiffs' Statements as a part of the discovery process. Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated misconduct in the course of the trial proceedings.

### C. Plaintiffs have demonstrated that the conduct of Travelers prevented them from fully presenting their case.

Plaintiffs assert that, had they been in possession of Plaintiffs' Statements, they would have successfully been able to corroborate their arguments in demonstrating the presence of the phantom vehicle that had caused them to hydroplane and turn their car sideways. The Court cannot predict whether the case would have been decided in their favor if they had been

permitted to introduce such evidence, but it is not required to do so. For a new trial to be granted, Plaintiff need not show that a different result would have come about, but that the judgment obtained was unfair. *Harris v. Mapp*, 719 F. Supp. 1317, 1324 (E.D. Va. 1989), *aff'd* 907 F.2d 1138 (4th Cir. 1990). Given the absence of other corroborative evidence, Plaintiffs' Statements would have been essential to a full presentation of their case and to a fair judgment. Travelers' actions prevented Plaintiffs' from fully presenting their case.

The Court finds that Plaintiffs have presented a meritorious claim, that Plaintiffs have proven some level of misconduct, and that Plaintiffs were unable to fully present their case due to the non-disclosure. In balancing the competing policies favoring the finality of judgments and justice being served, the Court finds that here, the scale tips in favor of justice.

### III. CONCLUSION.

For the forgoing reasons, Plaintiffs' Motion is GRANTED.

/s/
Charles B. Day
United States Magistrate Judge
November 7, 2006

CBD:acg